BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

MARCH TERM, 1911.

---

HUGH L. ROGERS, Respondent, v. HOME INSUR-
ANCE COMPANY OF NEW YORK, Appellant.

Kansas City Court of Appeals, April 3, 1911.

1. INSURANCE: Knowledge of Intention: Accomplished Fact.
Notice or knowledge that a party intends, in the future, to do
an act, is not notice or knowledge that the act has been in fact
accomplished.

2. ———: ———: Delivery of Policy: Existing Insurance. If
a policy of insurance is delivered and premium accepted with
the knowledge that there is other insurance, then in existence,
on the property, it avoids a provision in the policy that other
insurance shall be consented to by the insurer by endorsement
on the policy.

3. ———: ———: Waiver: Notice: Intention. Where the in-
sured takes out a policy which provides that additional insur-
ance will render it void unless consent therefor shall be indorsed
on the policy; notice by the assured that he intends to take out
more insurance and the insurer's acquiescence, is not a waiver
of such provision, where several policies of other insurance are
afterwards, at different times, taken out, but no notice given
after it was done, and no indorsement made. Cases discussed
and distinguished.

155 App.]                    (276)

4. ———: ———: **Breach: Waiver.** There is no breach of a condition against additional insurance until such insurance is taken, and there cannot be a waiver of a breach before it occurs.

Appeal from Clinton Circuit Court.—*Hon. A. D. Burnes,* Judge.

REVERSED.

*F. P. Ellis, R. H. Musser* and *Fyke & Snider* for appellant.

(1) The court erred in admitting testimony of respondent of alleged conversations with appellant's agent, Doherty, as to his intention to procure other insurance. To constitute a waiver of the condition against other insurance something more is necessary than notice that insured intends or expects to procure additional insurance. Hutchinson v. Ins. Co., 21 Mo. 97; Deitz v. Ins. Co., 38 Mo. 85; Rothschild v. Ins. Co., 62 Mo. 356; Carpenter v. Ins. Co., 16 Pet. 494; Insurance Co. v. Mowry, 96 U. S. 544; Insurance Co. v. Hurd, 37 Mich. 11; Insurance Co. v. Norwood, 57 Kan. 610; Kimball v. Ins. Co., 8 Gray 33; Slobodisky v. Ins. Co., 72 N. W. 483 (Neb.); Turner v. Ins. Co., 16 Fed. 454; Atlas Reduction Co. v. Ins. Co., 71 C. C. A. 21, 138 Fed. 497; Gray v. Ins. Co., 155 N. Y. 180. (2) There being no evidence whatever that knowledge of the fact that respondent had procured other insurance or the amount thereof was brought home to appellant, the court should have sustained appellant's demurrer at the close of respondent's case, and at the close of all the evidence. (3) The court erred in sustaining respondent's objection to the following question, propounded to witness, Stuckey: State whether or not at that time (May 23, 1906) you asked Wm. A. Rodgers what other insurance he had upon this property and if he told you these Home policies were all the insurance he had? Wm. A. Rodgers was respondent's son and agent. There was a question of veracity between Wm. A. Rogers and Doherty. A foundation for im-

peachment had been laid by asking Wm. A. Rogers if
he did not make such statement. ' (4)   The court erred
in admitting evidence of the value of attorney's fees.
The respondent's evidence wholly fails to establish any
state of facts to warrant the jury in finding that ap-
pellant's refusal to pay was vexatious.   Blackwell v. Ins.
Co., 80 Mo. App. 75; Renfro v. Ins. Co., 129 S. W. 44.

*John A. Cross* for respondent.

(1)   It cannot be denied that the evidence tended
strongly to establish a waiver of the conditions of the
policy pleaded by appellant in its answer, the weight
and sufficiency of which evidence is always a question of
fact for the jury to determine.   Gale v. Ins. Co., 33 Mo.
App. 664; Hoffman v. Ins. Co., 56 Mo. App. 301; Porter
v. Ins. Co., 62 Mo. App. 526; 2 Wood, Fire Ins., p. 943.
Prior to the taking out of the additional insurance
respondent notified appellant's agent Doherty, of his in-
tention to do so, and he orally consented to the same.
This agent had full authority under our decisions to
waive the written conditions of the policy as to addi-
tional insurance, being in all things, the *alter ego* of the
company.   The above facts constitute a waiver of the
terms of the policy, and the appellant is estopped from
pleading a forfeiture of the same as defense to this suit.
Nickell v. Ins. Co., 144 Mo. 420; Laundry Co. v. Ins. Co.,
151 Mo. 90; Thompson v. Ins. Co., 169 Mo. 12; Polk v.
Ins. Co., 114 Mo. App. 514; Hayward v. Nat. Ins. Co., 52
Mo. 181.    Authorities have held, that where it is under-
stood between the insured and the agent of the company,
that the former intends to secure additional insurance,
a provision in the policy forbidding the insurance, will
be waived. McCabe v. Ins. Co., 14 Hun. 599; Hartford
Ins. Co. v. McLemore, 7 Tex. Civ. App. 317; Carpenter
v. Ins. Co., 61 Mich. 635.   (2)   The court did not commit
error in admitting in evidence the value of attorneys
fees, or giving respondent's instruction number three.

The statute authorizing such penalty is constitutional. Fidelity Mut. Life Ins. Co., 185 U. S. 308; Ins. Co. v. Lewis, 187 U. S. 335; Ins. Co. v. Dobuey, 189 U. S. 301; Keller v. Ins. Co., 198 Mo. 440. (3) The question of vexatious delay is a question of fact to be determined by the jury from all the facts and circumstances in the case. Brown Admr. v. Ry. Ins. Co., 45 Mo. 221; Keller v. Ins. Co., 198 Mo. 440; Kellogg v. Ins. Co., 133 Mo. App. 402; Utz v. Ins. Co., 139 Mo. App. 156. Respondent's instruction number 3, and appellant's instruction number 5 correctly declared the law, and submitted this issue fairly to the jury. Appellant is in no position to complain at the giving of instructions upon the part of the respondent, for the reason, that no objections were made to the instructions at the time they were given, and exceptions saved to the ruling of the court thereon. Sheets v. Ins. Co., 126 S. W. 413; State v. Reed, 128 S. W. 4. (4) No attempt whatever was made by respondent's counsel in the trial of this cause to prove that one company or any company had gone into the hands of a receiver, and an examination of the record that no such attempt was made in this case.

ELLISON, J.—This action is based on a policy of fire insurance for $3000, in which plaintiff recovered the full amount with interest and in addition thereto the sum of $300 attorneys' fee and $300 penalty for alleged vexatious refusal to pay.

The policy was issued on the 16th of November, 1905, and contained a provision that if any other or additional insurance was on the property when this one was issued, or if any other was taken after its issuance. the policy should be wholly void, unless consent for such other insurance was endorsed on the policy. The record discloses that at the time the policy was issued there was no other insurance, but that several months afterwards, in May, 1906, other insurance in different companies, in amounts aggregating four thousand dollars, at times

from the first to the 23d of May, was taken by plaintiff without having defendant's consent for any of them endorsed on the policy. To avoid this failure to comply with this provision in the policy—a provision always upheld by the courts—plaintiff pleads a waiver, and that is the principal question for our consideration.

We may start with two statements: First, that provisions avoiding a policy for additional insurance, taken without the insurer's consent, and endorsement upon the policy, are willingly upheld as being in the interest of morality as well as justice, by preventing the temptation to arson and perjury which sometimes arises from over-insurance; and, second, that such provisions may be waived by the insurer, or its agent acting for it.

The waiver pleaded by plaintiff is not that shown in evidence; on the contrary, it is affirmatively disproved. The waiver is set out both in the petition and reply. In the petition it is explicitly stated to be that plaintiff had the other insurance when he took out the policy in suit and that defendant's agent knew it. And this is repeated in the reply, where it is alleged that defendant knew the amount of insurance on the property at the time it issued the policy in suit, and prior thereto, and at the time of the fire had full information thereof and, with knowledge of all the facts, made no objection to the other insurance, but consented thereto and waived *the giving of notice* thereof by plaintiff and waived the endorsement thereof on the policy.

It is shown, and is conceded, that at the time this policy was issued there was no other insurance, and the waiver now claimed is based on a different state of facts, viz. on knowledge of policies taken out several months *after* the issuance of the policy in suit. But no objection seems to have been made on this score at the trial and we therefore pass it by, and will address ourselves to a consideration of the evidence said to establish the waiver. It was given by plaintiff and his son and though dis-

puted by testimony in behalf of defendant, we must accept what it tends to prove as the facts in the case.

Matters transpiring between defendant's agent and plaintiff and his son, are what is relied upon to establish the waiver. This agent was the cashier of a local bank where plaintiff did business and where he had a private box in which he kept his papers, including the policy in suit. Plaintiff testified that when he took out the policy (in November, 1905) the agent said he ought to have more insurance and spoke of $10,000 being the proper amount; but he said what he was then taking was enough at that time. Then, in the latter part of April, 1906, more than five months afterwards, he met the agent on the street and told him that he "was about ready to take out other insurance now and I would send my boy there (to the bank) to get the policy." He further testified that the agent asked to issue the other insurance himself, but he declined, saying that he wished to patronize others also and that the agent said: "All right, if that is your choice." And that he afterwards sent his boy to the bank to get the present policy in order to copy description, terms, etc., in the policies he stated he intended to take. He stated that this conversation was in the latter part of April, and the first additional insurance was dated the first of May, but how many days between the conversation and the date of the policy he could not say. The son, however, testified that afterwards his father told him to go to the bank to get the policy from his box, and that he afterwards met the agent on the street and told him his father wanted to get the policies, that he was going to take out enough additional insurance to make it in the neighborhood of $10,000 on the buildings and machinery, and wanted to have the terms alike. The agent said "All right, I will get them for you." He then said he went to the bank the next day and got the policies and the next day after that the policy of May 1st was issued. But the other additional policies were taken out at

different times, one *ten* days and another *three weeks after*, and that the last one five days before the fire.

This testimony shows that defendant's agent was informed beforehand that other insurance would be taken out; but it further shows that he was not notified that it had been taken out. In other words, it shows that he was informed of an intention and expectation to do a thing in the future, but was not informed that such intention or expectation had been afterwards carried out or accomplished. Does such knowledge constitute a waiver of the provision of the policy requiring "any other contract of insurance" to be endorsed on the policy?

The question was pointedly decided in the negative in Gray v. Ins. Co., 155 N. Y. 180. In that case it was held that where an insurance company issues a policy with knowledge of existing facts which would render it void in its inception if its provisions were insisted upon, it will be presumed that it waived such provision, "as a contrary inference would impute to it a fraudulent intent to deliver and receive pay for an invalid instrument." Thus if it had been shown, as pleaded by plaintiff, that there was other insurance at the time this policy was taken and defendant's agent knew of it, and yet collected the premium and delivered the policy without endorsing it on the policy, it would be presumed he waived that requirement; otherwise he would commit a fraud. But it was further held that where there is no other insurance, and the insured subsequently informs the agent of an intention to procure more, it is not notice that he *has* procured it. That case cites another which holds that "notice of an intended act at a specified date in the future, does not ripen into knowledge of an existing fact, even when the period specified has passed." [McNierney v. Ins. Co., 48 Hun 239, 246.] In Havens v. Ins. Co., 111 Ind. 90, the court, in the course of the opinion, said: "The position of the appellant comes to this: After the policy was executed,

an agreement was made that other insurance might be taken, and that a written stipulation to that effect would be inserted in the policy. Other valid insurance was taken, without any notice to the company, or request to insert the stipulation agreed upon, and now it is said the company is estopped to insist upon the condition printed in the policy. This position is not sustainable. As has been seen, insurance companies are estopped to insist upon the enforcement of conditions when they have knowledge of existing facts which are inconsistent with the conditions imposed. Knowledge of the facts raises a presumption that the company waived that condition, and, upon principles of honesty and fair dealing, the law holds it estopped to say to the contrary when such knowledge is shown."

A companion case to this, involving insurance on adjoining property, burned in the same fire, was submitted on this point, in accordance with the view expressed by the New York Court of Appeals, that is, that if the agent knew of other insurance *when it issued the policy*, then it could not insist on the point as to no endorsement. But in this case, a long stride in advance of this was taken by an instruction which informed the jury that the provision was waived if the agent was informed at any time before the fire that plaintiff was *going* to take out more insurance. And as the only evidence of the agent's knowledge consisted of plaintiff's telling him what he was going to do, or intended to do, we can dispose of the whole case by discussing the sufficiency of such information as a base for a waiver.

The question has not been decided in this state. In Hutchinson v. Ins. Co., 21 Mo. 97, it was ruled that notice that other insurance had been taken did not waive the provision for endorsement upon the policy. But that view was not followed in Horwitz v. Ins. Co., 40 Mo. 557, and it was expressly overruled in Hayward v. Ins. Co., 52 Mo. 181, 195. But each of those cases differed from this in that in them the notice to the

agent was that certain named additional insurance had been taken, while here the notice was merely of an intention and that so indefinite as not to name the amount of insurance or with whom it would be taken.

In addition to these cases we are cited by plaintiff to Nickell v. Ins. Co., 144 Mo. 420; Laundry Co. v. Ins. Co., 151 Mo. 90; Thompson v. Ins. Co., 169 Mo. 12; and Polk v. Ins. Co., 114 Mo. App. 514. The first two of these are on the subject of the authority of the insurer's agents. That authority we have already stated. The Thompson case involved knowledge of additional insurance, but like the Horwitz and Hayward cases, the agent was notified of the existing fact before the fire and not only consented, but, after notice, himself issued a cyclone policy. The Polk case, decided by this court, in the only one that bears upon a state of facts having any resemblance to those shown in the record before us. An examination of that case and the evidence and reason upon which the opinion is based will show that it does not sustain plaintiff. The point was made in that case that the evidence only disclosed notice of an intention to take out other insurance, but we *rejected* that construction of the evidence, stating that "we cannot adopt the construction" put upon the evidence by the defendant. It is then shown that the agent was informed that the additional policy, stating the amount, was *then being issued* by another company, and it was actually delivered within "probably ten or fifteen minutes" afterwards. JOHNSTON, J., in the course of the opinion said: "We are not holding that the expression by the assured of an unexecuted intention to ignore a contract stipulation at some indefinite time imposes an obligation upon the insurer to dissent;" and puts the case on the ground that the agent actually knew of the policy when it was being prepared, and that the preparation of the policy, knowledge of the agent and delivery of the policy, were practically one act.

Plaintiff, to sustain his position, cites us to these cases from other states: McCabe v. Ins. Co., 14 Hun 599; Hartford Ins. Co. v. McLemore, 7 Tex. Civ. App. 317; and Carpenter v. Ins. Co., 61 Mich. 635. The first of these was overruled in Gray v. Ins. Co., supra, and the last is not a like case. The other does not aid plaintiff since it shows that the company's agent was not only informed of the future intention to take out additional policy, but knew that afterwards it became an accomplished fact, and he discussed the merits of the two companies with the assured. As reported in the 26 N. W. 928, the syllabus is misleading.

We are thus left without citation to any ruling on the question in this state; and the only ruling outside this state is against plaintiff's position. If we look to the respective obligations of the parties, we can come to a reasonable and just conclusion as to when these duties have been performed or have been waived. It is fundamental that there cannot be a waiver of a thing without knowledge of the existence of that which is the subject of waiver. It would, then, seem clearly to follow, as the most simple result, that an agent cannot waive additional insurance until he knows of its existence. In this case, the only act of defendant's agent relied upon as a waiver, is the act of acquiescence when informed of an intention to take out additional insurance which was not accomplished for two days, at least, after the information was given. Does acquiescence, at such stage, bind the insurer by waiver to what afterwards transpires in violation of the express terms of the contract? The waiver implies an act which the party knows is leading a person upon whom an obligation rests to perform some duty owing to that party, to believe it will not be required. The obligation resting upon plaintiff was to notify defendant's agent that he had procured other insurance, and the amount thereof, and to see that it was endorsed on the policy. What did the agent do to prevent plaintiff from doing that?

Admitting that plaintiff told him he intended to take out more insurance, is it not far more reasonable to suppose he would expect that when it was taken out plaintiff would comply with his contract and notify him of the fact and of the amount and ask him to endorse it? Especially in view of the fact that in stating his intention, plaintiff's son was indefinite, saying that he didn't know the exact amount, when he was talking to the agent. His testimony was: "I didn't know exactly the amount, but I told him in the neighborhood of $10,-000 on the buildings and machinery and appliances." He further said he was going to take out the insurance with the two Mr. Crosses, but in fact he afterwards took a part of it with another party and he did not remember whether he told the defendant's agent of the latter party.

Plaintiff's position sums up thus: That because an assured informs the insurer that he intends in the future to take out additional insurance and the insurer consents, the former may any time thereafter (for here some of it was taken more than three weeks afterwards) and from time to time, take out more insurance, without informing the insurer of having done so or asking that it be endorsed on his policy as stipulated therein. To say that such state of facts is a waiver, would be nothing less than saying the agreement in the policy was in great part nugatory. That this is true may be at once seen on a suggestion like this: Suppose that an insurer, in his own mind, is willing that additional insurance may be taken, and the assured states to him that he intends to procure more; now if the insurer is willing, he, of course, will consent, and in thus consenting he, according to plaintiff's view, nullifies the contract by waiver. So, therefore, in order to avoid a waiver, he must refuse to consent, the result being that additional insurance can never be had by indorsement except when the assured desires it to be indorsed.

The reason upon which a waiver is based, is that the party setting up the contract, by words or conduct

has induced the other party to believe he need not per-
form. But in this case, there is no ground whatever
upon which to rest a statement that defendant's agent
induced plaintiff to believe that he need not have the
additional insurance endorsed on the policy, for the rea-
son that the agent never knew such insurance had, in
fact, been taken. So far as the record discloses, the
agent never learned of other insurance until after the
fire. An intention to take out additional insurance did
not violate the provision of the policy. There could not
be a violation until the forbidden act was committed. If
then the agent knows of such violation and yet makes
no move to cancel the policy, but treats it as a subsist-
ing contract, he waives the provision.

We can see no ground upon which to justify the
judgment, and it is therefore reversed. All concur.