Truitt HOUNIHAN, Administrator of the Estate of Gary L. Hounihan, Deceased, Plaintiff-Respondent,

v.

FARM BUREAU MUTUAL INSURANCE COMPANY OF MISSOURI, Defendant-Appellant.

No. 9850.

Missouri Court of Appeals, Springfield District.

May 1, 1975.

James E. Reeves, Ward & Reeves, Caruthersville, for plaintiff-respondent.

J. Lee Purcell, Jerry M. Merrell, Hyde, Purcell, Wilhoit & Edmundson, Poplar Bluff, for defendant-appellant.

Before BILLINGS, C. J., and HOGAN and FLANIGAN, JJ.

BILLINGS, Chief Judge.

In this court tried case the Circuit Court of New Madrid County entered judgment for the plaintiff for the amount of a fire insurance policy issued by the defendant, together with statutory penalties for vexatious refusal to pay the loss. Defendant contends there was insufficient evidence for the court to find against its affirmative defense of material increase in hazard and it was error for the court to find it guilty of vexatious refusal to pay the fire loss. We affirm.

■ Initially, we must agree with plaintiff that defendant's points relied on fail to measure up to the requirements of Rule 84.04(d), V.A.M.R. They are abstract statements which fail to inform us wherein and why the trial court's rulings were erroneous. However, by reference to the transcript and argument portion of defendant's brief, we are able to glean the gist of its complaints to the rulings of the trial court and will in this instance consider the same.

The named insured, Gary Hounihan, and his cousin died as a result of burns they received in a fire, and a brother, Dennis, was also burned. Gary, his wife Brenda, and their child formerly lived together in the farm dwelling; but prior to the fire, marital problems had arisen, and Brenda and the child were staying with her parents.

Following an investigation, the defendant initially denied liability under the policy because of "foul play", "suspicious circumstances", and because it thought the fire was intentionally set by Gary Hounihan. Defendant's investigator concluded his report to defendant thus: "We recommend that a formal denial of this claim be issued because of the relationship between Gary Hounihan and his wife, Brenda Hounihan. We feel that the denial can be made in a manner tendered with good judgment which will not involve us in an out of court accusation of arson. It is entirely possible that we will find it necessary to defend that decision, and if and when that occurs, we might want to entertain a compromise settlement offer. The funeral services for the deceased were conducted last week and we feel it important in our first contact with Mrs. Hounihan be made shortly after that denial, if it is to be made at this time, be made at the time of that first contact."

In its original answer to plaintiff's suit on the policy the defendant denied the loss occurred while the policy was in effect, denied the fact of loss of the insured property, denied notice of the fire loss and denied

it had denied liability under the policy or refused to pay the loss. In answers to interrogatories filed more than eleven months after the fire the defendant stated its investigation as to the cause and origin of the fire was continuing, acknowledged notice of the fire loss the day after the fire, and admitted it had denied liability on the policy five weeks after the fire. The defendant amended its answer by adding the following affirmative defense: "Gary L. Hounihan did, by his activity, increase the hazard insured against by means which were within the control and knowledge of said Gary L. Hounihan . . . ." In reply to plaintiff's additional interrogatory the defendant stated that the insured "did, by his activity in permitting highly volatilible [sic] substances such as gasoline to be placed on the premises which burned with his knowledge and control, and thereby increased the hazard insured against, and the said substances within the said house, which were placed there prior to the time of the fire, were placed in the residence within the control and the knowledge of Gary L. Hounihan, and by this action the said Gary L. Hounihan voluntarily increased the hazard insured against and thereby violated the terms and conditions of the insurance contract and temporarily suspended coverage . . . ."

Admittedly, the defendant had the burden of proof on its affirmative defense that its named insured was responsible for materially increasing the hazard insured against. By its judgment the trial court found against the defendant on this issue. A finding against a party having the burden of persuasion is not required to be supported by any evidence since the trier of the fact may simply not give credence to the testimony. Thus, a verdict in favor of the party not having the burden of proof need not be supported by any evidence. Hollocher v. Taylor, 506 S.W.2d 105 (Mo.App.1974). Here, the trial judge was the trier of fact and he was at liberty to disbelieve the defendant's contradictory evidence on its affirmative defense. Earney v. Clay, 516 S.W.2d 59 (Mo.App.1974). In this case the initial denial of liability was based upon the defendant's conclusion that the fire had its origin in arson committed by the insured. There was no evidence offered by the defendant to confirm its suspicion that the insured intentionally set the fire. Defendant's own eyewitness to the fire, Dennis Hounihan, refuted that postulate, as well as its pleaded defense of increase in hazard.

Further, by first denying liability as above set forth, the defendant was foreclosed from later advancing a different ground for denying coverage. Aetna Casualty & Surety Company v. Haas, 422 S.W.2d 316 (Mo.1968). Stone v. Waters, 483 S.W.2d 639 (Mo.App.1972). Defendant's point is without merit.

The defendant's remaining point concerns the court's finding that its refusal to pay the fire loss was vexatious and the imposition of damages and attorneys fees under § 375.420, RSMo 1969, V.A.M.S.

The denial of liability under an insurance policy without stating any ground for denial is sufficient to warrant the submission of the issue of penalty and attorney fees. Bennett v. National Fire Ins. Co. of Hartford, 235 Mo.App. 720, 143 S.W.2d 479 (1940). "Mere suspicion that the origin fire is of an incendiary nature, without any substantial facts on which to base that suspicion, will not justify an insurer in refusing to pay the loss. If such refusal or delay is based on such suspicion alone, then such delay is vexatious within the meaning of [§ 374.420, RSMo 1969]." Firemen's Ins. Co. of Newark v. Smith, 83 F.Supp. 668, 673 (W.D.Mo.1949), aff'd 180 F.2d 371 (8th Cir.), cert. den. 339 U.S. 980, 70 S.Ct. 1028, 94 L.Ed. 1384 (1950). The fact that the judgment may be adverse to the insurer is not conclusive but the trier of fact may find the refusal to pay was vexatious from its failure to establish the grounds on which the refusal was based.

Firemen's Ins. Co. of Newark v. Smith, 180 F.2d at 379.

"[A] refusal to pay is vexatious if founded not upon what appear to be facts but only on a possibility that later investigation may develop facts justifying refusal to pay, even if such further investigation does develop such facts." Buffalo Ins. Co. of City of Buffalo v. Bommarito, 42 F.2d 53, 57 (8th Cir. 1930).

Here, after an extensive investigation, the defendant's agent recommended a formal denial of liability be made "because of the relationship" between the insured and his wife while at the same time recognizing that because of lack of substantial evidence to prove arson a compromise settlement of the claim might be in order. We also note that nearly a year later the defendant was still seeking facts upon which to warrant denial of liability on some ground. On the record presented the trial judge could find the defendant's refusal to pay the loss was vexatious.

Our review of this court tried case has been governed by Rule 73.01 "The rule as revised [effective January 1, 1975] eliminates the provision that '[t]he judgment shall not be set aside unless clearly erroneous'; but it still provides that appellate review of a court tried case shall be 'as in suits of an equitable nature.' The nature of review in equity cases has historically demanded that due deference be given to the findings and conclusions of the trial chancellor, and that this rule of deference not be ignored 'unless the evidence is palpably insufficient to sustain the findings.' [citations omitted]." R. L. S. v. J. E. S., 522 S.W.2d 5 (Mo.App.1975).

Applying the foregoing standard to the findings and judgment of the experienced trial judge who heard this case, we cannot say the evidence is palpably insufficient.

The judgment is affirmed.

All concur.